## BISHINGER–NATURELLE CORPORATION v. PHILAD CO.

## REALISTIC PERMANENT WAVE MACH. CO. v. SAME.

### Nos. 126, 127.

District Court, D. Delaware.
March 13, 1940.

Walter J. Blenko (of Stebbins, Blenko & Parmelee), of Pittsburgh, Pa., George B. Finnegan, Jr. (of Morgan, Finnegan & Durham), of New York City, William B. Jaspert, of Pittsburgh, Pa., and Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., for plaintiff Bishinger-Naturelle Corporation.

Walter J. Blenko (of Stebbins, Blenko & Parmelee), of Pittsburgh, Pa., William B. Jaspert, of Pittsburgh, Pa., and Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., for plaintiff Realistic Permanent Wave Mach. Co.

Arthur J. Hudson (of Kwis, Hudson & Kent) of Cleveland, Ohio, and Herbert L. Cohen, of Wilmington, Del., for defendant.

NIELDS, District Judge.

Motions for preliminary injunctions.

These suits arise out of conflicting rights asserted by the plaintiffs and by The Philad Company (hereinafter referred to as "Philad"), under United States letters patent pertaining to the permanent waving of hair in what is known as a croquignole wave. In each suit the complaint raises the same questions. They allege that for many years plaintiffs manufactured and sold, with the full knowledge and consent of Philad, equipment, materials and supplies designed and adapted for practicing the invention of Philad's patent, and that plaintiffs' vendees purchased such equipment relying upon representations that the beauty shops, the ultimate vendees of the equipment sold by plaintiffs, were free of any charge of infringement under Philad's patent by reason of a fully paid, non-exclusive license granted by Philad to each of the plaintiffs.

Defendant owns Mayer reissue patent No. 18,841 relating to croquignole hair waving. In practicing the method of the patent the following equipment is used: A clamp for clamping a strand of hair adjacent to the head, a rod upon which the hair is rolled in spiral fashion, a pad of flannel-like material, an enclosing envelope of impervious material such as aluminum foil, suitable hair waving solution for moistening the curl of hair being formed, and a heating device usually in the form of an electric heating clamp.

The Philad company does not manufacture any equipment used in practicing the Mayer process. Its business has been issuing licenses to various manufacturers of the equipment above recited. In 1939 it had issued eighteen such license contracts. Among the licensees were the plaintiffs in these suits. Their licenses were paid up licenses not requiring license fees. All other licenses issued by Philad required the payment of fees based on a percentage of the selling price of the equipment sold by the licensees. In three respects all licenses were essentially alike. First, in providing for a minimum price below which the licensee could not sell the equipment; second, in limiting the number of licenses which could be granted by Philad to eighteen, although in the case of plaintiffs this limitation had been waived; and third, the licenses purported to grant to the licensee, in connection with

the equipment sold, the right to pass on to the ultimate vendee,—the beauty shop,—the privilege of practicing the method of the Mayer reissue patent. .

Under the license contracts Philad bound itself to sue infringers. This it did by suing, as contributory infringers, manufacturers of croquignole hair waving equipment who held no license, either express or implied. The suit of The Philad Company v. Lechler Laboratories, Inc., was brought in the United States District Court for the Southern District of New York. Relief was denied Philad on the ground that Philad, by its system of doing business, conditioned the license to a beauty shop upon the purchase of some equipment from one of Philad's licensees, thereby deriving profit from the sale of unpatented equipment. Thus Philad was controlling the supply of croquignole equipment beyond the monopoly of the patent and rendering its licensees free from competition in the sale of such equipment. The decision was affirmed by the United States Circuit Court of Appeals for the Second Circuit. 107 F.2d 747, 748. The court of appeals in sustaining the lower court held: "The patent sought to be enforced is on a process of waving hair. It does not give the plaintiff a monopoly in the appliance by which the process is operated. Yet the plaintiff's course of conduct shows plainly that the sole use made of the patent is to suppress competition in the appliances. It is not entitled to relief against those who sell such appliances without its leave."

Philad accepted the decision in the Second Circuit as controlling and changed its practice respecting the issuance of licenses. Generally, it notified the trade that every beauty shop practicing the Mayer croquignole hair waving process must obtain a license from it. As a result of the decision in the Second Circuit the holders of licenses under the Mayer patent failed to pay further royalties. For such nonpayment Philad cancelled the licenses. It could not, however, cancel the licenses of plaintiffs as there were no royalties accruing thereunder.

The complaint of Naturelle prays in part "That a temporary restraining order, a preliminary injunction pending this suit * * * be granted restraining Philad * * * from otherwise interfering with Naturelle's right to sell equipment, materials and supplies for the express purpose of practicing said inventions and for its ultimate vendees to use the same in practicing said inventions" of the Mayer process patent. The prayer contained in the complaint of Realistic is substantially the same.

In plain language, plaintiffs want all advertising and solicitation by defendant of beauty parlors and of the trade to state that beauty parlors must obtain licenses to practice the process of the Mayer patent from Philad, except those parlors or traders who have a license to practice the process of the Mayer patent by having purchased equipment from plaintiffs or who might purchase such equipment from plaintiffs in the future.

At this stage of the pending suit it may be assumed that the licenses held by plaintiffs are paid up and royalty free. But plaintiffs also assume that they have the right to grant an implied license to use the process of the Mayer reissue patent upon the sale of equipment and materials to beauty parlors.

Plaintiffs contend the only illegal parts of their license attaches to the number of licensees and the minimum price control, whereas the Court of Appeals for the Second Circuit based its decision on the wrongful use of the patent and not on the number of licensees or the control of prices. The court said: "The patent sought to be enforced is on a process of waving hair. It does not give the plaintiff a monopoly in the appliances by which the process is operated. . Yet the plaintiff's course of conduct shows plainly that the sole use made of the patent is to suppress competition in the appliances. * * * In both the Carbice case and the Leitch case the emphasis was on the fact that the articles handled by the alleged contributory infringers were not covered by the patent, and on the further fact that the patentee by his method of doing business was using his patent as if it did cover such articles." Philad Co. v. Lechler Laboratories, 2 Cir., 107 F.2d 747, 748.

In its former practice the Philad Company assumed to have a patent covering the equipment used in practicing the Mayer process. The patent covered only the process for curling hair and nothing else. Attempting to extend the patent to equipment and not confining it to the process was the vice of Philad's former policy, and was the very practice condemned by the Supreme Court of the United States.

Defendant's present practice is essentially different from the present practice of the Duart Company. That company takes from the beauty shop an application for a Philad license. Duart endorses the application and sends it to Philad together with a license fee. Thereupon a Philad license issues directly to the beauty shop to practice the method of the Mayer patent. The license is good for a year and under it the beauty shop can buy equipment from any manufacturer. The license fee is included in the cost of the equipment. When a beauty shop buys a Duart machine it gets a straight Philad license. It is unrestricted in the future purchases of equipment.

The problems presented by these suits are obviously of importance not only to the plaintiffs but to the trade in general. To determine what are the contract rights between the parties and their proper construction involves complex questions of law. On this motion for a preliminary injunction plaintiffs have not shown that they will probably prevail at the final hearing.

The motions must be denied.